[No. 7,047.—In Bank.]

## LAKE VINEYARD LAND AND WATER ASSOCIATION *v.* THE SAN GABRIEL ORANGE GROVE ASSOCIATION.

CONSTRUCTION OF DEED—DESCRIPTION IN DEED—PAROL TESTIMONY TO EXPLAIN DEED.—In an action to determine the right to a stream of water, the question was whether the stream was included in the description given in the reservation in the deed of partition referred to in the opinion, and the Court below found that it was not. *Held,* that the finding was sustained by the evidence.

APPEAL from a judgment for the plaintiff and from an order denying a new trial in the Seventeenth District Court, County of Los Angeles. SEPULVEDA, J.

A petition for rehearing was filed in this case after judgment, and denied.

*Brunson & Wells* and *R. M. Widney,* for Appellant.

*Thom & Stephens* and *Glassell, Smith & Smith,* for Respondent.

SHARPSTEIN, J.:

W. and G., being the joint owners of a certain tract of land through which the Arroyo Seco runs, executed a deed of partition on the 18th of December, 1873, which contains the following stipulation:

"Reserving, however, unto the said parties of the first and second parts (said W. and G.) the joint right and ownership in and to all waters of the Tibbet Springs, so called, situated upon tract No. 2 (W.'s tract), last above described; said waters to be developed and taken out at a point at or above the junction of said springs, near where the blue granite·ledge crops out on the eastern bank, distant about two hundred yards up the stream, from a point in the arroyo known as the Devil's Gate."

The question which the Court below was called upon to determine, was whether this reservation included a stream of water which runs down on the west side of the arroyo and unites with the waters running on the east side thereof at a

point on the west side of said arroyo some distance below said blue granite ledge. The Court found that it did not, and the appellants insist that that finding is not supported by the evidence. There is little or no conflict of evidence as to the location of the blue granite ledge, or as to what waters unite near where it crops out on the east bank of the arroyo; and it appears from a map, introduced by the appellants, that the waters in controversy do not unite with the waters running on the east side of said arroyo at a point near where said blue granite ledge crops out on the east bank; but, as before stated, do unite at a point much nearer where said blue granite ledge crops out on the west bank of said arroyo.

Several witnesses testified that two streams did unite on the east side of the arroyo near the blue granite ledge, neither of which is the stream in dispute. It seems to us quite clear that the appellants must be restricted to such waters as unite near where said blue granite ledge crops out on the east bank. And there is sufficient evidence to justify the finding of the Court that the water running on the west side of the arroyo did not unite with the waters running on the east side of it at a point near where the blue granite ledge crops out on the east bank of the arroyo.

Had it been the intention of the parties to reserve all the waters of the arroyo, to be developed and taken out at a point near where the blue granite ledge crops out, it could have been expressed in those very words. The reference to the junction, near the blue granite ledge, on the eastern bank, two hundred yards above Devil's Gate, would in that view of the matter be surplusage. The junction of the two streams on the east side of the arroyo is, according to the evidence of some of the witnesses, about two hundred yards above the Devil's Gate. The junction of all the waters of the arroyo, as before stated, is on the west side, and much less than two hundred yards above the Devil's Gate, and much nearer where the blue granite ledge crops out on the western bank, than to where it crops out on the eastern bank of the arroyo. We think that this construction satisfies all the calls of the deed, while the one contended for by appellants would discard many of them.

Judgment and order affirmed.

McKinstry, J., and Morrison, C. J., concurred.

Thornton, J., concurred in the judgment.

Ross, J., being disqualified, took no part in this decision.

Myrick, J., and McKee, J., dissenting:

December 18th, 1873, Wilson and Griffin owned portions of the Rancho San Pasqual. That day they made a deed of partition of their portions of the rancho, by which Wilson received tract No. 2, and all the waters upon tract No. 2, except the waters of the "Tibbet Springs," so called, which waters were to remain in joint ownership, as follows:

"Reserving, however, unto the said parties the ownership in and to all the waters of the Tibbet Springs, so called; said waters to be developed and taken out at a point at or above the junction of said springs, near where the blue granite ledge crops out on the eastern bank, distant about two hundred yards up the stream from a point in the arroyo known as the Devil's Gate, said waters to be conducted," etc.

Certain lands were partitioned to Griffin prior to March 20th, 1874. Defendant S. G. O. G. Association purchased of Griffin his interest in the land and water rights.

On the 20th of March, 1874, Wilson and the S. G. O. G. Association made an agreement in writing, referring to the use of the waters of the "Tibbet Springs," providing for a division of the use by time instead of by quantity, and referring to the possible occasion for constructing a submerged dam.

In 1875 plaintiff acquired the right of Wilson. B. D. Wilson was president of plaintiff from June, 1875, to 1878. The trial occurred September, 1879.

The only question between the plaintiff and defendants is as to the identity of certain springs, referred to in the deed of partition as the Tibbet Springs; the plaintiff contending that the name Tibbet Springs, as therein used, designates only such springs as are situated on the eastern bank of the Arroyo Seco. On the other hand, the defendants claim that Tibbet Springs include not only the springs on the eastern bank of the arroyo, but also the springs in the bed of the arroyo, and on the western bank of the arroyo, where are the springs and waters in controversy.

After hearing the testimony, the Court below found, among other facts, the following:

Situated upon said tract No. 2, there are and were at the execution of the partition deed, certain springs known as the Tibbet Springs, which are and at all times were situated on the easterly bank of the Arroyo Seco; also certain other springs now and for several years prior to the commencement of this action known as the Ivy Springs, on said tract No. 2, on the westerly bank of said arroyo, and in the bed of the arroyo, on the westerly side thereof. At the time of the execution of said partition deed there flowed and still flow from said springs on the easterly bank of said arroyo, known as the Tibbet Springs, two streams of water which came and still come to a junction near where a blue granite ledge crops out, on the eastern bank of the Arroyo Seco, distant a little over two hundred yards up the stream, from a point in the arroyo, known as the Devil's Gate. The waters of the said Ivy Springs then flowed and still flow down the said arroyo, on the westerly side thereof, and did not then, and do not now, form a junction with any waters at or near where the blue granite ledge crops out on the eastern bank of the arroyo, or at any other point on the easterly side of said arroyo. The springs, at the time of the execution of the partition deed, and since known as the Tibbet Springs, are the springs then and still rising on the east bank of the arroyo, and did not then include and never have included any spring or water rising on the west bank of the arroyo, or in the bed of the arroyo on the west side thereof.

The question for us to determine, is whether the foregoing findings are sustained by the evidence.

The evidence is in substance as follows: In 1866, Wilson and Griffin, joint owners, gave the name of Tibbet Springs to all the springs, including those on the east, those in the bed of the arroyo, and those on the west; the name being given from a man named Tibbets who had lived near there. The name Tibbet Springs was intended to include those marked by plaintiff's map as Ivy Springs. When the deed of partition was under negotiation, Griffin had bargained for a conveyance of his interest to T. F. Croft (who was acting in that regard for defendant association), and Croft as a part

of the negotiation asked Wilson to point out the Tibbet Springs and indicate what waters were intended to be included under that name. Wilson took Croft upon the ground and pointed out the different groups, those on the east, those in the bed of the arroyo, and those on the west, and said they all constituted the Tibbet Springs, and were included in the agreement to be used in common. The deed of partition was made with that understanding. Subsequently, and while he was the joint owner, Wilson recognized the right of the Association to one half of the water from all the springs, and with his knowledge it constructed a ditch which joined the water from the western springs with that from the others. There is no evidence that at the time of executing the deed of partition or before, Wilson understood that the springs were not included with the others under the general name of Tibbet Springs; neither is there any evidence that at that time the western springs were known as or called the Ivy Springs. . One witness speaks of them as having been called Ivy Springs about a year after the partition deed; others say they received the name from a man named Ivy who had a bee ranch near them in 1876, more than two years after the deed; others still, who have known the waters for many years, never heard the name Ivy Springs applied to them until this controversy arose. The Court did not find that at the date of the partition deed the western springs were known by Wilson or any other person as the Ivy Springs; the finding upon that point is, "now, and for several years prior to the commencement of this action, known as the Ivy Springs." The action having been commenced May 14th, 1879, at least three years, perhaps four, may have elapsed after the name Ivy Springs began to be applied, and yet at least a year had elapsed after the deed before the use of the name.

By the terms of the partition deed, "said waters to be developed and taken out at or above the junction of said springs near where the blue granite ledge crops out on the eastern bank, distant about two hundred yards up the stream from a point in the arroyo known as the Devil's Gate."

Testimony offered by plaintiff is to the effect that the waters from the western springs do not join the waters from the eastern springs except at a point *below* the blue granite ledge,

and plaintiff claims that therefore the calls of the deed are certain, and can not be varied by parol evidence to show that Wilson intended any other than as specified in the deed. The testimony offered by defendant, however, is that in 1873 and 1874 the waters from all the springs joined *above* the blue granite ledge, the old channels being still visible; and that since then floods have changed the channels so that the joining is below the blue granite ledge. It was therefore competent to prove by parol that Wilson intended to embrace all the springs under the general name of Tibbet Springs.

There is no conflict in the evidence that Wilson understood that the name Tibbet Springs included all the springs from the east to the west bank of the arroyo; that he intended to and did vest in the defendant's grantor a right to the use of one half of the waters of all the springs, and that the name Ivy Springs was not known at the date of the transaction. The finding of the Court that the Tibbet Springs included only the springs on the eastern bank of the arroyo is not supported by the evidence, and we think that the judgment should therefore be reversed.